## HALVERSON v. WALKER.

No. 2077.    Decided November 26, 1910 (112 Pac. 804).

1. EVIDENCE—PAROL EVIDENCE—INCOMPLETE AGREEMENT.    Where a preliminary written agreement recites that a formal agreement is to be prepared, there is no complete contract, and the real intention of the parties will govern and must be ascertained from what was said and done immediately preceding the preparation of the preliminary memorandum.    (Page 266.)

2. EVIDENCE—PAROL EVIDENCE—AMBIGUITY IN INSTRUMENT.    Where the language of a written agreement is ambiguous the circumstances surrounding and affecting the parties, and the subject-matter of the agreement may be inquired into.    (Page 266.)

3. SALES—CONSTRUCTION OF CONTRACT—PRICE—"BALANCE."    A contract for the sale of a half interest in a barber shop by W. to H. provided that "it is understood and agreed that H. is to pay one thousand nine hundred and twelve dollars and fifty cents, for a one-half interest in barber shop, including all fixtures and everything pertaining to the same now contained in shop, and including lease.    Said H. is to advance on debts such sum as may be necessary, and balance to be paid in regular course of business as the same may be necessary."    Held, that the total amount that H. was to pay was one thousand, nine hundred and twelve dollars and fifty cents; the word "balance" referring to the purchase price as named in the agreement and not to the subsisting debts of the seller over and above the one thousand nine hundred and twelve dollars and fifty cents.    (Page 268.)

4. GOOD WILL—DEFINITION OF.    The good will of a business is the probability that old customers will resort to the old place.    (Page 272.)

5. GOOD WILL—SALE OF—CONSTRUCTION OF CONTRACT—EVIDENCE.    A contract for the sale of a half interest in a barber shop, including fixtures and the lease of the building, held, under the evidence, to include the good will of the business.    (Page 273.)

6. SALES—CONSTRUCTION OF CONTRACT—PURCHASE PRICE—EVIDENCE.    The purchase price, as stated in a memorandum of agreement for the sale of a half interest in a barber shop, held, under the evidence, to be the full price that the seller was to receive for the furniture and fixtures, the lease of the building, and the good will of the business.    (Page 273.)

7. EVIDENCE—PAROL EVIDENCE—CONSIDERATION OF CONTRACT. Where the consideration of a contract of sale is expressed, in a written memorandum of the sale, parol evidence that a different and greater consideration was actually agreed on, is inadmissible. (Page 273.)

8. APPEAL AND ERROR—REVIEW—FINDINGS OF FACT. Findings of fact by the trial court, which are sustained by the greater weight of the evidence, will not be disturbed on appeal. (Page 273.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Fred Halverson against David F. Walker.

Judgment for plaintiff, defendant appeals.

AFFIRMED.

*E. C. Ashton* and *Moyle & Van Cott* for appellant.

*A. T. Sanford* for respondents.

FRICK, J.

In June, 1908, respondent commenced this action in equity for a dissolution of the partnership then existing between him and appellant, and for an accounting and distribution of the assets of the partnership business after payment of the partnership debt.

Both parties agreed that a dissolution of the partnership should be had, that the debts be paid, and a distribution of the assets be made, but they did not, and could not, agree upon the extent of their respective liabilities for the debts that appellant owed on the buisness at the time the partnership was formed. All other matters arising out of the partnership business were either agreed upon between the parties or were determined to the satisfaction of each by the district court, and a settlement of all those matters was had in that court. The only question that is presented to us is the question with respect to the amount that respondent should pay

of the debts of appellant that were outstanding at the time the partnership was formed.

On the 29th day of November, 1907, after considerable bargaining, respondent purchased from appellant a one-half interest in the barber shop which he conducted in Salt Lake City. To evidence the transaction the parties had prepared and signed the following memorandum: "It is understood and agreed that Fred Halverson is to pay one thousand, nine hundred and twelve dollars and fifty cents for a one half interest in barber shop, including all fixtures and everything pertaining to same, now contained in shop and including lease. Said Fred Halverson is to advance on debts such sum as may be necessary, and balance to be paid in regular course of business as the same may be necessary. Formal agreement to be hereafter drawn and dated December 1, 1907. November 29, 1907."

We remark that from the fact that a formal agreement was to be drawn (which was not done), as well as from the face of the memorandum itself, it is apparent that the memorandum was not intended as a completed contract; that is, one in which all the terms of the bargain and sale **1, 2** were expressed. In view of this, the real intention of the parties had to be ascertained from what was said and done at and immediately preceding the time that the memorandum was proposed and signed. This was the view that the parties entertained at the trial, as is made apparent from the evidence which they submitted to the court. After the court had heard all of the evidence adduced by both parties, it made its findings of fact, none of which is assailed, except the following: "That prior to the time of the partnership agreement between the plaintiff and the defendant, the defendant carrier on the business of a barber at the place where it is now conducted, and on the 29th day of November, 1907, the defendant sold to the plaintiff for the sum of one thousand, nine hundred and twelve dollars and fifty cents, one-half of the interest in the barber shop, including all fixtures, good will, and everything pertaining to the same then in said shop, together with the lease on said premises

at No. 215 South Main Street, Salt Lake City, Utah. In accordance with said agreement and understanding of the parties, the plaintiff purchased an undivided one-half interest of all the property and fixtures in or pertaining to said barber shop. At the time of the sale of said half interest in said personal property and fixtures, there was existing a chattel mortgage on the whole of it for two thousand dollars and a title note against a part of it for two hundred and twenty-seven dollars. The plaintiff did not assume or agree to pay any part of said indebtedness and it was agreed that the defendant should pay the same, and that the plaintiff should have said half interest free and clear of incumbrances." The conclusion of law based on the foregoing two findings is also complained of.

The court also found, in connection with the foregoing findings, that before this action was commenced appellant had reduced the amount owing by him on the chattel mortgage and title note referred to in said findings to the sum of one thousand, three hundred and thirty-six dollars and forty cents; that shortly after the action was commenced the mortgagee began proceedings to foreclose the chattel mortgage by advertising the mortgaged property for sale; that by reason thereof, and to preserve said property from forced sale, respondent was compelled to and did pay the amount unpaid and then due on said chattel mortgage, which, with interest and attorney's fees, amounted to the sum of one thousand, four hundred and nine dollars and sixty five cents. Pursuant to the two findings which we have set forth, and which are assailed by appellant, and the other findings last above referred to, the court entered judgment in favor of respondent for the amount last above stated.

We have carefully examined the evidence and are well satisfied that the findings of the court are amply supported by the evidence, and, further, that the conclusions of law as found by the court are likewise sound. We might therefore affirm the judgment of the court without further discussion, but as appellant strenuously insists that the judgment is wrong, we have deemed it best to consider the case

somewhat in detail and along the lines of appellant's contentions.

Appellant insists that this judgment is erroneous, for the reason that respondent, in purchasing the one-half interest from appellant, agreed to pay one-half of the debts that appellant owed on the business and which amounted to three thousand, two hundred dollars. In other words, appellant contends that respondent was to advance one thousand, nine hundred and twelve dollars and fifty cents, as a part liquidation of said sum of three thousand two hundred dollars, and that, after applying the one thousand, nine hundred and twelve dollars and fifty cents, there still remained unpaid the sum of one thousand, two hundred and eighty-seven dollars and fifty cents, of which respondent had agreed to pay one half, but which was to be paid by him out of the earnings of the business. This, appellant contends, was the actual agreement between him and respondent, and he now insists that the court erred in its findings to the contrary, and that the findings as they now stand are not supported by the evidence and are contrary thereto.

Appellant's counsel insist that the foregoing contention is supported by the terms of the memorandum itself, which was signed by the parties at the time respondent purchased the one-half interest in the barber shop. In their brief they say: "We maintain that the word 'balance,' as used in the memorandum, is equivalent to the word 'debts,' which precedes the word 'balance' in the same sentence."          **3**
We cannot agree with this contention. The word "balance," as it is used in the memorandum, is used in the sense of remainder and clearly refers to the remaining portion of the one thousand, nine hundred and twelve dollars and fifty cents, only a part of which respondent was to pay forthwith. That is, he was to pay so much of that sum as would meet the demands of the creditors whose claims had to be paid then. The balance—remainder—of the one thousand, nine hundred and twelve dollars and fifty cents was to be paid by respondent as stated in the memorandum. Moreover, it is not at all likely that the writer who prepared

the memorandum, who was a lawyer, would state only a portion of the consideration. At least, this is a circumstance worthy of consideration. Having undertaken to state what the consideration was, he would, in all probability, have stated the whole of it. But it is also clear that the sentence following the one in which the one thousand, nine hundred and twelve dollars and fifty cents is mentioned does not refer to what the consideration was to be, but clearly refers only to the manner in which the respondent should pay the expressed consideration, namely, the one thousand, nine hundred and twelve dollars and fifty cents, into the business, and the meaning of the memorandum is to the effect that this should be done by respondent by immediately advancing— paying "on the debts such sum as may be necessary"— and whatever remained unpaid of the one thousand, nine hundred and twelve dollars and fifty cents was to be paid "in regular course of business when necessary.

Appellant's counsel contend that, in view of all the evidence, it is clear that appellant did not agree to sell the one-half interest in his barber shop to respondent for the sum of one thousand, nine hundred and twelve dollars and fifty cents. In this connection, it is insisted that the evidence is to the effect that the furniture and fixtures belonging to the barber shop when respondent purchased were alone of the value of five thousand, one hundred dollars; that the unexpired term of the lease was worth an additional amount of three thousand eight hundred dollars, and that the good will of the business was worth, in addition to the two amounts aforesaid, the sum of one thousand, five hundred dollars to two thousand dollars. The evidence is to the effect that respondent was an employee of appellant for some time before the sale of the one-half interest was consummated and thus was familiar with the buisness; that appellant had fixed the cost price of the furniture and fixtures at five thousand, one hundred dollars; that respondent objected to this valuation as entirely too high, and that it was agreed between them that seventy-five per cent. of this sum , namely, three thousand, eight hundred and twenty-five dollars, should be taken as the ac-

tual value of the furniture and fixtures. With regard to this, appellant testified: "He (respondent) told me that the stuff wasn't worth only seventy-five cents on the dollar, if it were taken out. I said, 'Probably it isn't, but,' I said, 'the stuff is here, the good will is there, and the lease is there, and we will not say anything about that at all, but simply let that go.' 'Well,' he says, 'all right, then. . . .' Then we discounted the stuff seventy-five cents on the dollar and cut it in two, and whatever it was he was to apply. I told him right there and then, I said, 'I don't want any of this money; simply apply it on the debts, and the balance of it will be paid in the regular course of business." The seventy-five per cent. of five thousand, one hundred dollars amounted to three thousand, eight hundred and twenty-five dollars. This sum "cut in two," as appellant says, would make one part one thousand, nine hundred and twelve dollars and fifty cents. This is the amount that respondent claims he agreed to pay for a one-half interest, while appellant contends that in addition to that sum respondent also agreed to pay one half of the debts remaining after the one thousand, nine hundred and twelve dollars and fifty cents had been appplied, as before stated.

We have already shown that appellant's construction of the memorandum is not tenable. Nor do we think that his contention should prevail that he did not sell the one-half interest in the barber shop to respondent for the sum of one thousand, nine hundred and twelve dollars and fifty cents, because that was the value only of the furniture and fixtures, exclusive of the value of the unexpired term of the lease and the good will of the business. The lease was expressly included with the furniture and the fixtures in the memorandum. Appellant did not allege that there was either fraud or mutual mistake with respect to the terms of the memorandum; nor did he ask that the agreement as therein expressed be reformed. The only element, therefore, that is left to consider is the value of the good will of his business. The question is not, were the price and terms of sale respecting the barber.shop such as the appellant and re-

spondent, or either of them, were likely to have made, but the question is, what were the price and terms agreed upon? True, where the language of an agreement is ambiguous, all the circumstances surrounding and affecting the parties and the subject-matter of the agreement ought to be considered. This the district court did, and after doing so, found the issues in favor of respondent, as we have before shown. We have already disposed of the unexpired term of the lease by showing that it was expressly included within the terms of the written memorandum. In this connection we remark, however, that by the very terms of the lease itself the time it had to run was uncertain. The tenancy under certain conditions could have been terminated by the landlord at any time. This, it appears, was considered by the parties, and all that appellant urges is, that the landlord in all probability would not have enforced his rights in that respect. It is not claimed that the landlord bound himself not to do so, but only that it was probable that he would not. In our judgment, the parties considered the whole situation with respect to the unexpired term of the lease, and then expressly included it within the consideration expressed in the written memorandum. This eliminates the question of the value of the lease.

Upon the question respecting the value of the good will of the business, the testimony shows without conflict that appellant had been engaged in the barber business for about eight years within a distance of about fifty feet of where he was so engaged when he sold the one-half interest to respondent; that he had moved to the new location only a few months before the sale; that all of his old customers followed him to the new location, and that the new place was larger than the old one and contained considerably more furniture and fixtures; that the furniture and fixtures then in the shop were fairly worth three thousand, eight hundred and twenty-five dollars; that there was a chattel mortgage for two thousand, two hundred dollars and a title note which were liens on said furniture and fixtures; and that appellant's indebtedness, including said liens, amounted to at least three thou-

sand, two hundred dollars, or perhaps a few hundred dollars more. It further appeared from the evidence that appellant was somewhat in arrears for rent; that a portion of the foregoing indebtedness was pressing and had to be paid or the creditor would enforce his lien, and that in the fall of 1907, at the time of the transfer, there was a great stringency in the money market in Salt Lake City, as well as throughout the country generally. Moreover, it is made apparent that if appellant was not necessarily bound to sell, he was at least desirous of doing so and to obtain money to pay off the pressing debts. Under such circumstances, it is easy to perceive why appellant might have sold on less favorable terms to himself than he otherwise would, and why respondent would offer to pay less for the same property than he might have done under different circumstances.

"Good will," as defined by Lord Eldon, "means nothing more than the probability that the old customers **4** will resort to the old place." See 4 Words and Phrases, 3128, where the cases upon this subject are collated. If, therefore, we keep in mind the fact that appellant had continued in business at practically the same place for a period of eight years; that in moving into the new place he had retained all of his old customers, as he said he had; that notwithstanding his eight years of continuous business he was indebted at least three thousand, two hundred dollars, a large portion of which was secured by a chattel mortgage on the only property he had, and his creditors were then pressing for payment for a considerable portion of the amount owing by him, then logically one of two things must follow, namely, his business either was not profitable or he needed a business manager. If the business was such that when properly managed it would not yield sufficient to pay the debts incurred in establishing it, then it was not a very desirable business and the good will thereof might not be considered as of any value by a prospective purchaser. If the owner of a business cannot pay off liens resting on the property used in the business, and if such liens were foreclosed and the owner's equity of redemption was all that was left him, and which

was no greater than what appeared to be in this case, we cannot well see how the good will of such a business would be considered of great, if of any, value by any one. Whatever its value might have been, however, it is clear that under the circumstances above referred to and which were shown to exist in this case, the owner of the business would not be in a position to make such value, if any, available; and thus it is easy to see why he might sell an interest in his business without special reference to the value of the good will, which we think was the case in making the sale to respondent. No doubt, if the case be considered entirely from appellant's point of view, he should have had a considerably larger amount for one-half interest of the business sold by him to respondent.

It is appellant's misfortune, however, that not only is the evidence of respondent and his brother, who was present at the time the bargain between the parties was made, and who prepared the written memorandum, contrary to appellant's claims, but there are other weighty circumstances that are likewise contrary thereto. One unfavorable circumstance is, that appellant insists that respondent agreed to pay a consideration which was not, in express terms at least, mentioned in the written memorandum. If the one thousand nine hundred and twelve dollars and fifty cents which respondent agreed to pay had also been omitted from the memorandum and the whole consideration had been left to the verbal understanding, the situation would have been somewhat different. Where, however, a consideration is expressed in a written agreement, the purchaser ought not, at least without good cause therefor, be required to pay a consideration in addition to that expressed in the written agreement. Moreover, when it is contended that one has assumed to pay the debts of another, the fact that the assumption was in fact made should be reasonably well established. Upon these questions the facts were all before the district court and it found them against appellant's contention, and we think that in view of all the

38 Utah—18

circumstances the findings that are assailed were sustained by the greater weight of the evidence. This being so, it follows that the conclusion of law and the judgment, both of which are based upon said findings, must likewise be sustained.

The judgment therefore is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.